IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER BUTTS**, et al., | : | |
| | : | |
| **Plaintiffs** | : | |
| v. | : | **3:12-CV-1330** |
| | : | **(JUDGE MARIANI)** |
| **SOUTHWESTERN ENERGY** | : | |
| **PRODUCTION CO.** | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I. Introduction

Plaintiffs Christopher Butts, Julianne Griepenburg, Laura Butts, James McCrone and Ann Marie McCrone (collectively "Plaintiffs") filed a Complaint (Doc. 1) against Defendant Southwestern Energy Production Company ("SEPCO" or "Defendant") alleging claims of private nuisance (Count I) and negligence (Count II).[1] Following discovery, SEPCO filed a Motion for Summary Judgment (Doc. 38). For the reasons that follow, the Court will deny Defendant's Motion.

### II. Summary Judgment Standard of Review

Through summary adjudication, courts may dispose of those claims that do not present a "genuine issue as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law

---

[1] The Complaint contains a third count, titled "Unreasonable Drilling Activities"; however, it appears that Plaintiffs allege Count III as part of their nuisance claim. (*See* April 26, 2013 Report and Recommendation, Doc. 23 at 14 n.5; Br. in Opp. to Def.'s Mot. to Dismiss, Doc. 10, at 8-9).

will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

In *Celotex*, the Supreme Court explained how a party seeking summary judgment can establish its initial burden. *Id.* at 330-333.

> The manner in which this showing can be made depends upon which party will bear the burden of persuasion on the challenged claim at trial. . . . If the burden of persuasion at trial would be on the non-moving party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. . . .
>
> Where the moving party adopts this second option and seeks summary judgment on the ground that the nonmoving party—who will bear the burden of persuasion at trial—has no evidence, the mechanics of discharging Rule 56's burden of production are somewhat trickier. Plainly, a conclusory assertion that the nonmoving party has no evidence is insufficient. Such a "burden" of production is no burden at all and would simply permit summary judgment procedure to be converted into a tool for harassment. Rather, . . . a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record. This may require the moving party to depose the nonmoving party's witnesses or to establish the inadequacy of documentary evidence. If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories, and other exchanges between the parties that are in the record. Either way, however, the moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party.

2

If the moving party has not fully discharged this initial burden of production, its motion for summary judgment must be denied, and the Court need not consider whether the moving party has met its ultimate burden of persuasion.

*Id.* at 330-333 (internal citations and emphasis omitted).

Once the moving party makes an initial showing, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

Consistent with *Celotex* and Rule 56 of the Federal Rules of Civil Procedure, Local Rule 56.1 provides, in pertinent part,

> A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried. . . .
>
> Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. . . .

## III. Analysis

As an initial matter, SEPCO's Motion fails to comply with Local Rule 56.1, and many of its arguments fail to meet the threshold requirements for summary judgment under *Celotex*, 477 U.S. 330-333. Defendant's Statement of Facts ("DSOF") contains only nineteen paragraphs, eight of which are without any citation to the record. (Doc. 39). Although SEPCO submits eight exhibits with its Motion, SEPCO's attachments total only thirty-nine pages, including coversheets and verifications. (Doc. 38-1). Despite conducting depositions for each of the five Plaintiffs, Defendant includes only scant excerpts of their testimony. (Def.'s Exs. A-C, E-F). While at least two Plaintiff depositions are over one hundred pages long (*see* L. Butts, J. McCrone Deps., Doc. 38-1, at Exs. C, F), the excerpts SEPCO provides the Court range from three to eight pages. (Exs. A-C, E-F).

Plaintiffs' Brief in Opposition (Doc. 45) and Answer to Defendant's Statement of Facts ("PSOF") (Doc. 46) failed to fill the gaps in the summary judgment record. Plaintiffs attached no exhibits, nor did they provide a counterstatement of facts. Instead, Plaintiffs' Brief and Answer to Defendant's Statement of Facts refer to the deposition testimony SEPCO submitted, without in any way supplementing the record.

In sum, since neither party substantially complied with the dictates of Rule 56.1, the Court is left with a truncated record that precludes proper summary judgment analysis.

a. Private Nuisance (Count I)

First, Plaintiffs assert that SEPCO's drilling activities constitute a private nuisance.

Pennsylvania law has adopted Section 822 of the Restatement of Torts for determining the existence of a private nuisance. *Waschak v. Moffat*, 379 Pa. 441, 109 A.2d 310 (1954).[2] Section 822 defines a private nuisance as "conduct [that] is a legal cause of an invasion of another's interest in the private use and enjoyment of land." The Restatement further provides, "There is liability for a nuisance only to those to whom it causes significant harm, of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose." *Kembel v. Schlegel*, 329 Pa. Super. 159, 166, 478 A.2d 11, 15 (1984) (quoting Restatement § 821F). "By significant harm is meant harm of importance, involving more than slight inconvenience or petty annoyance. The law does not concern itself with trifles, and therefore there must be a real and appreciable invasion of the plaintiff's interests[.]" Restatement § 821F, Comment C.

### i. Excessive Noise and Light

SEPCO argues that Plaintiffs' noise and light nuisance claims require either expert testimony or objective data, neither of which Plaintiffs provided. (Reply Br., Doc. 51, at 12). Essentially, SEPCO asserts that Plaintiffs are hypersensitive and that their subjective assessments are insufficient under the Restatement and corresponding Pennsylvania law to establish a nuisance claim. (*Id.* at 11-13).

---

[2] Although "the *Moffat* court actually adopted the version of § 822 that appeared in the first Restatement of Torts," because the "substantive differences between the two versions . . . are minimal," the Pennsylvania Superior Court's analysis utilized the Second Restatement. *Kembel v. Schlegel*, 329 Pa. Super. 159, 166, 478 A.2d 11, 14 (1984). The Court will follow the Pennsylvania Superior Court and refer to the Second Restatement.

Restatement § 821F, Comment D addresses the issue of a hypersensitive plaintiff, providing that when an alleged nuisance concerns "only personal discomfort or annoyance, it is sometimes difficult to determine whether the invasion is significant." Comment D looks to community norms and establishes an ordinary person standard for determining whether a nuisance defendant's conduct creates significant harm.

> The standard for the determination of significant character is the standard of normal persons or property in the particular locality. If normal persons living in the community would regard the invasion in question as definitely offensive, seriously annoying or intolerable, then the invasion is significant. If normal persons in that locality would not be substantially annoyed or disturbed by the situation, then the invasion is not a significant one, even though the idiosyncracies of the particular plaintiff may make it unendurable to him. Rights and privileges as to the use and enjoyment of land are based on the general standards of normal persons in the community and not on the standards of the individuals who happen to be there at the time.

Restatement § 821F, Comment D.

"It is for the trier of fact to determine whether there was a significant invasion of [the plaintiffs'] enjoyment of their property, and, if such an invasion existed, whether the invasion was unreasonable." *Kembel*, 478 A.2d at 15.

Here, neither party provides a record reference regarding this issue. (*See* Br. in Supp., Doc 40, at 10-14; Br. in Opp. at 11-13; Reply Br. at 11-13). However, there seems to be agreement that Plaintiffs observed excessive light and sound emanating from SEPCO's drilling activities. Although the Court was provided meager portions of Plaintiffs' deposition testimony, the record confirms that Plaintiffs testified that the noise and light emitted by SEPCO is significant and seriously annoying. (*See e.g.*, J. McCrone at 103:8-105:25).

6

While ultimately Plaintiffs will have to prove to a jury that their belief is in conformity with community standards, see *Kembel*, 478 A.2d at 15; at this juncture, Plaintiffs' testimony alone is sufficient to defeat a motion for summary judgment.

SEPCO contends that Plaintiffs must either provide expert testimony that light and sound emitted is excessive or they must be able to quantify the amount of light and sound into foot-candles and decibel levels. (Br. in Supp. at 13-15). SEPCO offers Susquehanna County Subdivision and Land Development Ordinances as measures of what constitutes excessive sound and light emissions. (*Id.*). Absent such objective evidence, Defendant contends that the Court is "without any standard by which" to "objectively determine if the noise [and light] at Round Pond is 'excessive.'" (*Id.* at 13). SEPCO cites *Kembel* for the proposition that an excessive noise nuisance action requires "acoustic measurements interpreted by an expert who could say that the particular noise is at some certain decibel level that would be offensive to the average person." (Br. in Supp. at 12-13).

However, *Kembel*'s procedural posture differs from the case at bar. In *Kembel*, the Superior Court reviewed the factual findings of a trial court. 478 A.2d at 14-16. Here, SEPCO asks the Court to grant its Motion for Summary Judgment and, thereby, bypass a fact finder's opportunity to determine whether the sound and light SEPCO emits constitutes a significant invasion of Plaintiffs' use and enjoyment of their property. However, the Count cannot discount Plaintiffs' deposition testimony or weigh its credibility on a motion for summary judgment. See *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d

Cir. 1990) ("We are keenly aware that credibility determinations are not the function of the judge. . . .") (citing Anderson, 477 U.S. at 249, 255). Instead, Kembel stated, "whether there was a significant invasion of [Plaintiffs] enjoyment of their property," is a question "for the trier of fact to determine[.]" 478 A.2d at 15. At trial, SEPCO can argue the amount of sound and light it emits is not significant or unreasonable, but such arguments turn on contested issues of fact and cannot provide the basis for summary judgment.

## ii. Water Contamination

Next, SEPCO asserts that "the plaintiffs cannot sustain their burden of proving water contamination because they have no expert evidence regarding causation." (Br. in Supp. at 10). In response, Plaintiffs cites 58 Pa. Const. Stat. § 3218(c)(1), which presumes "a well operator is responsible for pollution of a water supply if . . . (i) the water supply is within 1,000 feet of an oil or gas well; and (ii) the pollution occurred within six months after completion of drilling or alteration of the oil or gas well[.]" (Br. in Opp. at 9-10). Plaintiffs also rely upon their firsthand observations that their "water turned black" "right after" SEPCO's conducted drilling operations. (See e.g., A. McCrone Dep., Doc. 38-1, Def.'s Ex. E, at 33:5-34:2).

SEPCO replies that 58 Pa. Const. Stat. § 3218(c)(1) only "addresses circumstances in which a well operator may become responsible to offer landowners replacement water. It does not purport to set a standard for imposition of liability in private actions." (Reply Br. at 3 (citation omitted)). SEPCO's assertion runs contrary to Roth v. Cabot Oil & Gas Corp.,

8

919 F. Supp. 2d 476 (M.D. Pa. 2013), which recently addressed a similar set of facts. *Roth* involved an oil and natural gas company's motion to dismiss landowners' claims that the defendant contaminated their groundwater supply. 919 F. Supp. 2d 482-83. The landowners alleged,

> The Defendants began drilling operations at the Wells near the Plaintiffs' Property in or about April of 2010. Prior to that time, the Plaintiffs' groundwater supply had always appeared clean, containing no visible gases, malodors, or off-tastes. The Plaintiffs had their groundwater supply tested before the commencement of drilling operations, and those tests revealed that the pre-drilling groundwater supply did not contain detectable levels of methane gas. In August of 2010, the Plaintiffs began to notice that their groundwater supply had diminished in quality, containing excess sedimentation and appearing brown and cloudy.

*Id.* at 483 (internal citations omitted).

On the basis of these allegations and 58 Pa. Const. Stat. § 3218(c)(1), the Court in *Roth* concluded that the landowners satisfactorily pleaded causation. *Id.* at 487. The Court found that § 3218(c)(1) created a "statutory presumption" of causation. *Id.* "Notwithstanding this statutory presumption," the Court found, "[t]he temporal and physical proximity of the Defendants' actions to the Plaintiffs' harm, in addition to the lack of contemporaneous and alternative sources of the contamination, permit the reasonable inference that the Defendants were responsible for that harm." *Id.* In other words, the plaintiff's lay, sensory observations of their water quality formed an independent and sufficient basis for establishing causation.

9

The *Roth* analysis applies here. As in *Roth*, Plaintiffs assert that their water supply is within one thousand feet of Defendant's well.[3] Moreover, Plaintiffs make similar firsthand observations to those of the plaintiffs in *Roth*. *See* 919 F. Supp. 2d at 483. In both instances, the plaintiffs assert that their water was pristine prior the defendant-oil and natural gas companies' drilling. *See id*; A. McCrone Dep. at 33:16-34:2.

The *Roth* plaintiffs reported that there water became discolored, "brown and cloudy," with "excess sedimentation[.]" *See* 919 F. Supp. 2d at 483. Here, Plaintiffs report that their water "turned black" and then developed "a layer of brown rusty colored brownish sediment." (A. McCrone Dep. at 33:5-34:2, 35:18-22). The causal link alleged here is actually more direct than in *Roth*. In *Roth*, the plaintiffs observed changes in the quality of their water supply within several months after the defendant began drilling. 919 F. Supp. 2d at 483. Here, Plaintiffs testified that their water was affected within hours of an explosion on the Defendant's drilling site. (*See e.g.*, A. McCrone Dep. at 33:5-34:2).

Notwithstanding 58 Pa. Const. Stat. § 3218(c)(1) and Plaintiffs' firsthand account of the effects on their water supply, SEPCO asserts all water contamination cases require expert testimony to prove causation. (Reply Br. at 4 (citing *Ramsey v. Consol. Rail Corp.*, 111 F. Supp.2d 1030, 1038 (N.D. Ill. 2000)). Although it asserts that this proposition is

---

[3] Defendant argues that the Plaintiffs "assume[] without evidence that their water wells are, in fact, within 1,000 feet of the SEPCO natural-gas well at Round Pond." (Reply Br. at 3-4). SEPCO does not, however, provide any evidence to the contrary. SEPCO does not assert that Plaintiffs' water supply is more than one thousand feet from Defendant's drilling operations. Given the limited summary judgment record provided, the issue of the distance between Plaintiffs' water supply and Defendant's drilling operations is in dispute, precludes summary judgment and presents an issue for trial.
10

"commonly held," the only case SEPCO cites is *Ramsey*, a district court case from outside the Third Circuit that is distinguishable from the case at bar.

*Ramsey* followed the traditional paradigm for seeking summary judgment based on insufficient expert testimony. In *Ramsey*, the plaintiffs' produced expert reports and modeling data purporting to show that the plaintiff-daughter's liver cirrhosis was caused by her exposure to hazardous chemicals released by the defendants. 111 F. Supp.2d at 1031-32. In response, the defendant's expert argued that the plaintiffs' modeling data were "rendered unreliable by [the plaintiff's expert's] simplifying assumptions and inadequate calibration of the model." *Id.* at 1034. The defendant's expert also noted that none of twelve different tests conducted revealed contamination of the plaintiffs' water supply. *Id.* at 1035-38.

Here, Defendant does not produce expert testimony to negate Plaintiffs' firsthand observations that their water was contaminated. Had Defendant offered expert evidence that Plaintiffs water was not contaminated by its drilling operations or that the discoloration was produced by a different cause, SEPCO's Summary Judgment Motion might have placed it in a posture more suitable for summary judgment analysis. Absent such evidence, the only evidence regarding causation of record is Plaintiffs' testimony that their water "turned black" "right after" SEPCO's conducted drilling operations. (*See e.g.*, A. McCrone Dep. at 33:5-34:2). Contrary to SEPCO's contention, such testimony is sufficient to survive summary judgment. *See Roth*, 919 F. Supp. 2d at 487; *Bumbarger v. Walker*, 193 Pa.

11

Super. 301, 308, 164 A.2d 144, 148-49 (1960) (finding "sufficient evidence of causation present for the case to go to the jury" based on lay testimony regarding the ruination of spring water as a result of blasting operation by a neighboring strip mine); *Richard v. Kaufman*, 47 F. Supp. 337, 338-39 (E.D. Pa. 1942) ("It is true as the court said that it does not follow 'post hoc ergo propter hoc' but necessarily the effect follows the cause and when things have remained for years without change and a new element is introduced and the change comes, we may consider the coincidence, with the other circumstances which are present.").

Finally, Defendant argues that Plaintiffs' contamination claim must fail since they "blame the alleged water contamination on blasting[, and] SEPCO did not conduct blasting activities anywhere near Round Pond." (Reply Br. at 5). According to SEPCO, "A company called Brainard Explosives, LLC ("Brainard") conducted the blasting. (*Id.*). In response, Plaintiffs assert that Brainard was "contracted by the Defendant" and that "Defendant[] and/or its agent(s) conducted blasting activities near Round Pond Road." (PSOF, Doc. 46, at ¶¶ 13-14). As a result, there appears to be an issue of fact as to whether Brainard was an agent of Defendant.

From the limited record provided, the Court cannot definitively determine whether an issue of fact exists or whether it is material. SEPCO argues that Plaintiffs' position—that Brainard was an agent of Defendant—is not based on "proper evidence." (Reply Br. at 5). Defendant contends that Plaintiffs inappropriately cite James McCrone's deposition

testimony. (*Id.*) However, neither party offers the relevant portion of Mr. McCrone's deposition transcript. The Court refuses to speculate as to the contents of a deposition transcript not provided. Since SEPCO bears the initial burden of establishing the threshold requirements for summary judgment, *see Celotex*, 477 U.S. 330-333, this ambiguity precludes resolution of this issue through summary judgment.

Moreover, the statutory presumption in §3218(c)(i) places responsibility on the well operator for pollution of a water supply under certain circumstances. Whether this presumption can be overcome raises an issue of fact as to the role, if any, of Brainard in the drilling operations as well as the relationship, if any, between Brainard and the Defendant.

In sum, Plaintiffs have set forth sufficient facts to survive summary judgment with regard to their water contamination claim.

### iii. Standing

SEPCO's next set of arguments assert that Plaintiffs lack standing.

#### 1. Private v. Public Nuisance

Arguing in the alternative (Reply Br. at 16 n.5), SEPCO's briefs reiterate an argument already rejected by the Court in denying its Motion to Dismiss—that Plaintiffs lack standing since they allege a public, rather than private, nuisance (Doc. 23 at 7-12). Although both may be present, public and private nuisance claims are separate causes of action. *Youst v. Keck's Food Serv., Inc.*, 2014 Pa. Super 121, --- A.3d ----, 2014 WL 2601508, at *11 (Pa. Super. Ct. June 11, 2014) ("A nuisance may be public, private, or both public and private.").

Whereas a private nuisance involves an "invasion of [the plaintiff's] interest in the private use and enjoyment of [her] land," *id.* (quoting Restatement § 821D), a public nuisance does not require the plaintiff to have a private property interest in the area affected. *See Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 315 (3d Cir. 1985) ("An action for public nuisance may lie even though neither the plaintiff nor the defendant acts in the exercise of private property rights."); Restatement § 821B, Comment H ("Unlike a private nuisance, a public nuisance does not necessarily involve interference with use and enjoyment of land."). "Conduct does not become a public nuisance merely because it interferes with the use and enjoyment of land by a large number of persons." Restatement § 821B, Comment G.

Instead, a public nuisance requires "interference with a public right." *Id.* The Restatement defines a public right as one "common to the general public." *Hercules*, 762 F.2d at 315 (quoting Restatement § 821B(1)). An example of interference with a public right would be "the pollution of a stream that . . . prevents the use of a public bathing beach or kills the fish in a navigable stream and so deprives all members of the community of the right to fish." Restatement § 821B, Comment G. Prosser explains that a "public nuisance is a species of catch-all low-grade criminal offense, consisting of an interference with the rights of the community at large, which may include anything from the blocking of a highway to a gaming-house or indecent exposure." *Hercules*, 762 F.2d at 315 (quoting Prosser, *Private Action for Public Nuisance*, 52 Va. L. Rev. 997, 999 (1966)).

Since a public nuisance is a quasi-criminal action, "the normal remedy is in the hands of the state." *Id.*; *see also* Restatement § 821C(2). However, in limited circumstances, courts recognize a private right of action for a public nuisance. *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 446 (3d Cir. 2000).

> In order to recover damages in a private action for public nuisance, a plaintiff must have suffered a harm of greater magnitude and of a different kind than that which the general public suffered. The law requires greater and different injury because (1) it is difficult to draw any satisfactory line for any public nuisance and (2) to avoid multiplicity of actions, invasions of rights common to all of the public should be left to be remedied by public action by officials.

*Id.* (brackets, internal citations and quotation marks omitted).

As Prosser stated, "The seeds of confusion were sown when courts began to hold that a tort action would lie even for a purely public nuisance if the plaintiff had suffered 'particular damage.'" *Hercules*, 762 F.2d at 315 (quoting Prosser, *supra* at 999). Indeed, it appears such confusion may be present in Defendant's briefs. Defendant conflates a private nuisance action and a private right of action for a public nuisance. In its brief, SEPCO asserts that "many of [Plaintiffs'] claims . . . affect the entire Round Pond community." (Br. in Supp. at 16). Defendant contends that Plaintiffs' claims sound in public nuisance and should be brought by public officials, rather than the Plaintiffs. (*Id.* at 18).

SEPCO's assertions ignore the fact that Count I is a private nuisance claim, not a private claim for a public nuisance. (*See* Compl., Doc. 1, at ¶¶ 52-59). Plaintiffs claim that SEPCO's actions "caused a non-trespassory invasion of Plaintiffs' use and enjoyment *of their property*." (*Id.* at ¶ 53 (emphasis added)). In contrast, Plaintiffs do not allege that

15

SEPCO interfered with a public right, "common to the general public." See Hercules, 762 F.2d at 315. It is *their* property that Plaintiffs' assert SEPCO invaded.

As such, it is rather odd for Defendant to suggest that the alleged damage concerns a public right or is even more widespread than Plaintiffs assert. The Court fails to understand how such a suggestion could benefit Defendant. If SEPCO is correct and the damage alleged goes beyond Plaintiffs' private property, then—far from foreclosing Plaintiffs' private nuisance claim—SEPCO's assertion could potentially form the basis for an alternative cause of action. If, as SEPCO states, Plaintiffs' allegations go beyond their own property and "affect the entire Round Pond community" (Br. in Supp. at 16), then Plaintiffs' may also have a private claim for public nuisance—if Plaintiffs could show that they "suffered a harm of greater magnitude and of a different kind than that which the general public suffered." See Allegheny, 228 F.3d at 446.

In sum, SEPCO's assertion—that Plaintiffs fail to set forth a private nuisance claim because they cannot state a private claim for a public nuisance—has no merit.

### 2. Deforestation and Excessive Traffic

Defendant argues that Plaintiffs lack standing to bring claims for deforestation and excessive traffic. (Br. in Supp. at 15, 18-19). However, because of the limited summary judgment record provided and because the Court has already determined that material issues of fact exist as to Count I, the Court need not consider SEPCO's other arguments for summary judgment of Plaintiffs' nuisance claim. Defendant's argument—that there is "no

legal authority that would allow Plaintiffs to pursue" their nuisance claims for deforestation and excessive traffic (*id.* at 15, 18-19)—is essentially reduced to a request to narrow the evidentiary issues. These arguments are better suited for motion *in limine* in anticipation of trial rather than a motion for summary judgment. See *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) ("Unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of fact, a motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.")

    b. <u>Negligence (Count II)</u>

Count II alleges that SEPCO conducted its drilling activities negligently. Under Pennsylvania law proving negligence requires a plaintiff to establish "(1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another.'" *Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360, 1366 (3d Cir. 1993)).

In response to Plaintiffs' argument that Defendant negligently contaminated Plaintiffs' water supply, SEPCO make arguments mirroring its opposition to Plaintiffs' nuisance claim. (Br. in Supp. at 7-8, 10). SEPCO contests causation. (*Id.*). Since the Court has already determined that Plaintiffs adduced sufficient evidence of causation to defeat summary judgment as to Count I, the same analysis applies to Count II. See *Roth,* 919 F. Supp. 2d at

17

491 (noting the overlap between the causation analysis between nuisance and negligence claims in a water contamination case). Thus, a genuine issue of material fact exists as to whether SEPCO negligently contaminated Plaintiffs' water supply.

Second, Defendant contends, "Plaintiffs' negligence claim runs afoul of the 'economic-loss' rule." (Br. in Supp. at 5). SEPCO claims, "Plaintiffs make no claim of physical injury and only two claims of property damage: Laura Butts alleges that her car suffered damage from stones in the road; and Laura Butts, James McCrone and Anne Marie McCrone allege that their water wells were contaminated by some aspect of the SEPCO operation near Round Pond." (*Id.* at 6). However, because the Court determined that an issue of fact exists as to Plaintiffs' contamination claim, the Count need not consider whether another issue of fact exists as to the alleged car damage. Whether Plaintiffs should be permitted to offer evidence of the alleged car damage at trial is not an inappropriate issue for resolution on a motion for summary judgment. *See Bradley*, 913 F.2d at 1069.[4]

In sum, the Court cannot grant summary judgment as to Plaintiffs' negligence claim. The Court is mindful of the fact Plaintiffs ultimately bear the burden at trial of proving both their nuisance and negligence claims. However, given the truncated summary judgment record, the Court cannot conclude "a reasonable juror would be compelled" to find in favor

---

[4] SEPCO also asserts that Plaintiffs' negligence claim should be rejected since Plaintiffs do not allege that SEPCO breached a duty of care. (Br. in Supp. at 5). However, SEPCO neither "submits affirmative evidence that negates an essential element of [Plaintiffts'] claim[s]" nor "affirmatively show[s] the absence of evidence in the record." *See Celotex*, 477 U.S. at 331-32. Instead, Defendant's argument in this regard is nothing more than a "conclusory assertion," which is "insufficient" for granting a motion for summary judgment. *See id.* Thus, the Court cannot grant summary judgment on this basis.

18

of SEPCO on the facts provided. See *El v. Se. Pennsylvania Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).[5]

## IV. Issues for Trial

In summary, there are two main issues of fact that preclude summary judgment. First, there is a dispute as to whether the amount of sound and light SEPCO emits constitutes "significant harm, of a kind that would be suffered by a normal person in the community[.]" See *Kembel*, 478 A.2d at 15. Second, the parties dispute whether Defendant's conduct caused Plaintiffs' water contamination. SEPCO contends, "There is no evidence that SEPCO's natural-gas operation near Round Pond caused any contamination of the plaintiffs' water wells." (DSOF, Doc. 39, at ¶ 7). Plaintiffs deny this assertion, relying on their firsthand observations of the sudden deterioration of their ground water quality following an alleged explosion on Defendant's drill site, a loss of quality which the Plaintiffs assert continues to the present. (PSOF, Doc. 46, at ¶ 7).

Within the contamination issue, there is exists two significant sub-issues. First, there is a factual dispute regarding the distance between Defendant's drilling operations and Plaintiffs' water supply. This factual question is important because of its relevance to a possible 58 Pa. Const. Stat. § 3218(c)(1) statutory presumption. Second, an issue of fact

---

[5] SEPCO also seeks summary judgment regarding Plaintiffs' request for diminution-in-value damages. (Br. in Supp. at 19). SEPCO expects Plaintiffs will root their demand for diminution-in-value damages in the expert testimony of Joseph C. Fisher ("Fisher"). (*Id.*). Shortly after filing its Motion for Summary Judgment, Defendant filed a Motion to Strike Fisher's testimony, arguing that Fisher should not be permitted to testify as an expert. (Doc. 41). Because the Court will issue a separate order for Defendant's Motion to Strike, the Court shall not discuss Plaintiffs' request for diminution-in-value damages as part of the present opinion.

exists as to the relationship between Brainard and Defendant. SEPCO contends it conducted no blasting operations near Round Pond Road; Plaintiffs assert that Defendant "and/or its agent(s) [Brainard] conducted blasting activities near Round Pond Road." (DSOF at ¶¶13-14; PSOF at ¶¶13-14).

## V. Conclusion

For the foregoing reasons, the Court will deny Defendant's Motion for Summary Judgment (Doc. 38). A separate Order follows.

_____
Robert D. Mariani
United States District Judge